UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
GOLDSILVER, LLC,

Interpleader Plaintiff,

- against -

AMY JO SANGER and IAIN CLIFFORD a/k/a IAIN CLIFFORD STAMP,

Interpleader Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 8704 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I. Background

The present case is unusual both in substance and procedural posture. Plaintiff GoldSilver, LLC ("GoldSilver"), a dealer of precious metals, commenced this statutory interpleader action after receiving competing claims from defendants Amy Jo Sanger ("Sanger") and Iain Clifford, also known as Iain Clifford Stamp, ("Clifford") to an account containing approximately $900,000 in gold, silver, and cash. ECF No. 1 ("Compl."). As is typical in interpleader actions, GoldSilver claims no interest in the assets and asks this Court to determine which defendant is entitled to them. Id. Sanger contends that she established the trust in whose name the GoldSilver account was opened, the MTRXF Ministry Trust, and has authority over the account as trustee. See ECF No. 42 at 4; ECF No. 10. Clifford, meanwhile, asserts that the assets

originated with an entity he controls and are therefore his. See ECF No. 16. The Court need not and does not resolve that ultimate ownership dispute here.

The challenge of this case stems primarily from Clifford, who lists a United Kingdom address in his filings. ECF Nos. 5, 25. Clifford is proceeding pro se and has filed more than two dozen submissions since GoldSilver filed its interpleader complaint, many of which are duplicative and difficult to parse. Clifford also has a history of advancing arguments associated with the sovereign citizen movement.[1] For example, in proceedings in the U.K., Clifford contended that a contempt order directed to "Iain Clifford Stamp" applied only to the "[IAIN CLIFFORD STAMP] estate," and not to him personally as a "man under God's law," an argument that the Crown Court described as "gibberish" with no recognized meaning "in law or otherwise." ECF No. 44-1 at 12-13; ECF No. 44-2 at 7-8. The U.K. proceedings arose from an all-assets restraint

---

[1] The sovereign citizen movement is oft described as a "loosely affiliated group who follow their own sets of laws and, accordingly, do not recognize federal, state, or local laws, policies or regulations as legitimate." United States v. DiMartino, 949 F.3d 67, 69 (2d Cir. 2020) (internal quotation marks and citation omitted). A core tenet of the movement is that all persons have a split identity: a fictional "strawman" created by the government, often represented by the individual's name in capital letters, and the actual person. Kelly v. Barclays Cap., Inc., 2026 WL 1745788, at *1 (S.D.N.Y. June 17, 2026) (citing Thompson v. Donald J. Trump, Inc., USA, 2023 WL 3948906, at *2 (S.D.N.Y. June 12, 2023)). Sovereign citizens claim that the government has power only over the former, while the latter remains free. Id.

order entered in connection with a Financial Conduct Authority ("FCA") criminal investigation for Clifford's suspected violations of the Financial Services and Markets Act 2000. ECF No. 44-1 at 2. After serving several notices, described by the Crown Court as "non-sensical," and which challenged the authority and jurisdiction of both the Crown Court and the FCA, Clifford failed to appear for proceedings concerning alleged violations of the restraint order. ECF No. 44-1 at 8, 13. The Crown Court subsequently found Clifford in contempt, concluding that his violations were "so serious that only custodial sentences can be justified for them," sentencing him in absentia to twelve months of imprisonment, and issuing a bench warrant for his arrest. Fin. Conduct Auth. v. Stamp, [2025] EWCR 8 [19], [23] (Eng.). Clifford has maintained that he does not consent to the FCA's restraint order and continues to challenge the jurisdiction of the Crown Court. ECF No. 44-1 at 5, 12; ECF No. 44-2 at 3. On his website, Clifford represents that he "lives in constructive exile in North Cyprus facing an unlawful UK bench warrant."[2] ECF No. 44-3 at 9.

[2] Northern Cyprus, which has been administered by Turkish Cypriots since 1974 and proclaimed itself the "Turkish Republic of Northern Cyprus" in 1983, is not recognized by the United States or any other country other than Türkiye. See U.S. Dep't of State, 2022 Report on International Religious Freedom: Cyprus (May 15, 2023), https://www.state.gov/reports/2022-report-on-international-religious-freedom/cyprus. A United Nations-patrolled buffer zone separates Northern Cyprus from the Republic of Cyprus, which remains the only internationally recognized government on the island. Id. Northern Cyprus has

Against that backdrop, the Court now addresses four primary applications: (i) Clifford's motion to compel GoldSilver to deposit the precious metals with the Court; (ii) Clifford's request to refer this action to mediation and to permit his remote participation in mediation and other proceedings; (iii) Sanger's motion to strike Clifford's filings under the fugitive disentitlement doctrine and for the entry of a default judgment; and (iv) Clifford's motion for summary judgment.

## DISCUSSION

### I. Clifford's Motion to Compel Registry Deposit and Motion for Referral to Mediation and Interim Relief

Clifford has repeatedly asked this Court to compel GoldSilver to deposit the disputed metals with the Court via the Court Registry Investment System. See, e.g., ECF No. 20. The Court declines that request. GoldSilver has advised that while it is prepared to surrender the metals and while it does not necessarily oppose Clifford's request, it is equally prepared to continue safeguarding them if deposit with the Court is impracticable. ECF No. 32 at 1. Having explored several options, the Court concludes that deposit is prohibitively impracticable. GoldSilver stores

no extradition treaty with the U.K. Home Office, Extradition: Processes and Review, GOV.UK (Nov. 27, 2025), https://www.gov.uk/guidance/extradition-processes-and-review.

the metals in independent, fully-secured professional vaults managed by Brinks; conversely, the Court has no comparable facilities for the storage and security of over 300 gold and silver bars weighing more than 300 pounds. Courts routinely decline to require deposit of valuable physical items where such deposit would present logistical difficulties and where another party can safely store the assets. See, e.g., John v. Sotheby's, Inc., 141 F.R.D. 29, 34 (S.D.N.Y. 1992) (declining to require deposit of a painting where Sotheby's possessed appropriate storage facilities the Court lacked). Accordingly, there is no practical reason to disturb the present arrangement where GoldSilver has safeguarded – and will continue to safeguard through vaulting arrangements with Brinks – the assets pending further order of the Court.

Clifford also objects to GoldSilver's recovery of attorneys' fees and expenses from the interpleaded assets on the ground that GoldSilver is "guilty of unreasonable delay." ECF No. 20 at 2. The objection is premature and without merit: there is no evidence that GoldSilver unreasonably delayed, and GoldSilver has not yet submitted an attorneys' fee application for the Court's consideration. Further, Clifford's argument is at odds with the general rule that a disinterested, neutral stakeholder properly invoking interpleader is entitled to attorneys' fees and costs.

See Septembertide Pub., B.V. v. Stein & Day, Inc., 884 F.2d 675, 683 (2d Cir. 1989). The Court recognizes that GoldSilver will incur expenses, including attorneys' fees, while maintaining the disputed assets. GoldSilver will be reimbursed for the expenses incurred while safeguarding the metals, and the issue of attorneys' fees can be addressed if and when GoldSilver makes the corresponding application. Clifford's request is thus denied.

Clifford further asks that this action be referred to mediation and that the Court permit his remote participation in mediation and other proceedings. ECF No. 6. The Court denies that request as it remains unconvinced that mediation efforts would materially advance the resolution of the ownership dispute. Moreover, Clifford likely cannot or will not appear in the U.S. and remains subject to an arrest warrant abroad. The Court is in no way obligated to arrange remote proceedings to accommodate those circumstances, particularly given that Clifford has been held in contempt for failing to appear in court. Sanger and Clifford are reminded, however, that they are nevertheless capable of amicably resolving the instant ownership dispute if they so choose.

**II. Sanger's Motion to Strike**

Sanger asks the Court to strike Clifford's filings and enter a default judgment in her favor pursuant to the fugitive

disentitlement doctrine. ECF No. 42. There is no question that Clifford faces serious problems with U.K. authorities: the Crown Court's judgment reflects that after declining to appear for contempt proceedings concerning violations of the restraint order, Clifford was sentenced to twelve months of imprisonment, and a bench warrant was issued for his arrest. Fin. Conduct Auth. v. Stamp, [2025] EWCR 8 [19], [23] (Eng.). He apparently has not returned to the U.K. to face that sentence and, according to his website, resides in a territory that does not have an extradition treaty with the U.K. ECF No. 44-3 at 9. Regardless of the label one may attach to that conduct, however, Clifford does not appear to be a fugitive from U.S. authorities. The Court accordingly does not find a discretionary extension of the fugitive disentitlement doctrine warranted.

Bano v. Union Carbide Corp., 273 F.3d 120 (2d Cir. 2001), is instructive. There, the Second Circuit affirmed the district court's decision not to apply the fugitive disentitlement doctrine to litigants who were fugitives from proceedings in India, reasoning that their flight did not affect or prejudice the proceedings in this District or the enforceability of any resulting judgment. Id. at 125-27. Similarly, while Clifford may have "flouted the authority of the courts of [the U.K.]," id. at 126-

27, he has not yet defied the authority of this Court, is not a fugitive from U.S. authorities, and the disputed assets remain securely held by GoldSilver and subject to this Court's ultimate determination. Sanger's motion to strike Clifford's filings and for default judgment is therefore denied.[3]

**III. Clifford's Motion for Summary Judgment**

Clifford also moves for summary judgment and repeatedly asserts his entitlement to the disputed assets. ECF Nos. 23, 31, 32, 39, 47, 53. The request is premature, and the Court declines to grant it. This action exists to resolve competing claims to approximately $900,000 in precious metals, and the present record does not permit the Court to determine which claim is superior. Much of what the parties have submitted thus far consists of their own characterizations of the relevant transactions, along with documents whose authenticity and significance cannot presently be verified. It is far from clear that any of those materials would constitute admissible evidence. Under such circumstances, the Court cannot resolve ownership as a matter of law.

---

[3] Sanger and Clifford agree that the statutory fugitive disentitlement provision is not applicable because it concerns individuals evading U.S. criminal prosecution while pursuing claims in related forfeiture proceedings. See 28 U.S.C. § 2466.

Before the Court can review the parties' competing claims, it requires admissible evidence establishing the relevant chain of ownership and authority over the assets. This includes authenticated documentation from the relevant official, government or independent sources bearing on the ownership and transfer of the funds used to purchase the metals, as well as the creation and control of the relevant trust and GoldSilver accounts. Authentication is of paramount importance, particularly if any documents originate abroad. The Court will not resolve ownership of nearly $900,000 in assets based on unauthenticated records, nor will it rely exclusively on the parties' competing characterizations of what those records show, especially when one party is abroad and proceeds pro se. Summary judgment is plainly inappropriate at this stage, and Clifford's motion is denied without prejudice to renewal if Clifford can adduce authenticated evidence, from independent, official, or government sources, establishing his entitlement to the assets.[4]

[4] To the extent that Clifford contends that Sanger's failure to respond to requests for admission independently entitles him to judgment, that argument is unavailing. The record does not establish valid service of those requests while Sanger was proceeding pro se. Nor may a party prevail in a litigation based on a record entirely consisting of responses to requests for admission.

**IV. Clifford's Remaining Applications**

The docket reflects two additional motions, made by Clifford, warranting little discussion. Clifford seeks expedited discovery into the source of Sanger's legal fees based on his belief that Sanger liquidated assets belonging to him and used the "stolen" proceeds to retain counsel. ECF No. 30. That theory is entirely speculative, and the request is denied. Clifford also seeks leave to amend his unspecified "responsive pleadings" to assert cross-claims against Sanger's counsel for aiding and abetting conversion and breach of fiduciary duty. ECF No. 48. Clifford does not identify what pleading he proposes to amend. In any event, there is no basis for asserting cross-claims against a non-party attorney or law firm representing an opposing party, and the proposed claims rest on the same unsupported allegations concerning the source of Sanger's legal fees. Accordingly, leave to amend is denied.

**CONCLUSION**

For the foregoing reasons, Clifford's motions for referral to mediation and for interim relief, to compel registry deposit, for expedited discovery concerning Sanger's legal fees, and for leave to assert cross-claims is denied; his motion for summary judgment is denied without prejudice; and Sanger's motion to strike Clifford's filings and for default judgment is denied. GoldSilver

is directed to continue safeguarding the interpleaded assets pending further order of this Court. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 6, 20, 22, 23, 30, 41, 47, and 48.

Dated: August 28, 2026
New York, New York

Naomi Reice Buchwald

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE